UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case Number: 07-20190-CIV-MORENO

EIDY LABIBE SILEBI DE DONADO,

    Plaintiff,

vs.

LINDA SWACINA, DISTRICT DIRECTOR,
UNITED STATES CITIZENSHIP &
IMMIGRATION SERVICES, MIAMI
DISTRICT, AND ROBERT S. MUELLER, III,
DIRECTOR, FEDERAL BUREAU OF
INVESTIGATION,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANT'S ALTERNATIVE MOTION TO REMAND TO USCIS

Plaintiff Eidy Labibe Silebi De Donado is a citizen of Colombia who seeks a hearing on her naturalization application pursuant to 8 U.S.C. § 1447(b) or an order compelling the representatives of the United States Citizenship Immigration Services ("USCIS") to adjudicate her application. Defendants move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or in the alternative, to remand the matter to USCIS for completion of the administrative process. This Court holds that because Congress unequivocally set a 120-day time limit upon "examination" for adjudicating applications for naturalization, and the term "examination" as used in 8 U.S.C. § 1447(b) means the initial USCIS application interview, it has jurisdiction over this matter. However, the Court decides to follow the well reasoned approach of the many courts that have previously decided this issue and remands to the USCIS to make a determination on Plaintiff's application within 120 days from the date of this Order.

## BACKGROUND

Plaintiff Eidy Labibe Silebi De Donado is a citizen of Colombia. Since August 17, 2000, Plaintiff has been a lawful permanent resident of the United States. Plaintiff filed an application for naturalization, Form N-400, with the USCIS on October 28, 2005. Respondents initiated background checks for Plaintiff on November 7, 2005. The USCIS interviewed her in connection with her application on March 20, 2006. At that time, Plaintiff also passed the required exams in English and U.S. History and Government. As of March 22, 2007, the Federal Bureau of Investigations ("FBI") had not completed the requested background checks. Consequently, the USCIS has yet to render a decision on Plaintiff's application. As a result, Plaintiff filed the instant Petition for a hearing on her application or for an order of *mandamus*.

## LEGAL STANDARD

On a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969). The Court may only grant the motion where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle [her] to relief." Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Moreover, the Court must, "at this stage of the litigation, . . . accept [the plaintiff's] allegations as true." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

## SUBJECT MATTER JURISDICTION

Article III Courts are courts of limited jurisdiction and may act only in cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2006). Plaintiff

does not ask this Court to redress a violation of the United States Constitution. Rather, this action arises under federal statute. Plaintiff seeks (1) judicial review of her naturalization application in this Court pursuant to 8 U.S.C. § 1447(b) because the 120-day period following her initial examination has elapsed; or (2) an order compelling Defendants to make a determination on her application pursuant to the *Mandamus* Act, 28 U.S.C. § 1361; or (3) the Administrative Procedure Act, 5 U.S.C. § 702 *et seq*. ("APA"). Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

The Attorney General has the "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a) (2006). Section 1446(a) of Title 8 of the United States Code instructs the Attorney General to designate USCIS employees to conduct examinations for examinations of applicants and determine whether such applications should be granted or denied. Id. § 1446(a). However, Congress has conferred jurisdiction upon a district court in two situations. First, an applicant may petition for a *de novo* review of a denied application in district court "after a hearing before an immigration officer under section 1447(a) of this Title." Id. § 1421(c). Second, an applicant may petition a district court for a hearing on the application if USCIS fails to render a decision on the application "before the end of the 120-day period after the date on which the examination is conducted." Id. § 1447(b). Here, Plaintiff relies on section 1447(b) of Title 8 of the United States Code, which provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).

In the instant matter, Defendants concede that more than 120 days have elapsed since Plaintiff's first interview on March 20, 2006.  In fact, because all of the material facts are undisputed, this case becomes one of statutory interpretation.  At issue is the term "examination" referenced in section 1447(b).  Defendants argue that the term "examination" encompasses the entire process of determining Plaintiff's application for naturalization, including the FBI background check.  Because Plaintiff's background check remains pending, Defendants submit that the 120-day clock has yet to run.  If Defendants' interpretation is correct, the case must be dismissed for lack of subject matter jurisdiction.  Plaintiff, on the other hand, submits that "examination" refers to the date of her interview, which triggered the running of Defendants' 120-day clock to adjudicate her application.  Therefore, according to section 1447(b), the Court would have jurisdiction over this matter.  This Court agrees with Plaintiff that it does and adopts the majority view that the term "examination" means the initial USCIS naturalization application interview.  See Rodriguez v. Gonzales, No. 07-20022-CIV-UNGARO, slip op. at 4 (S.D. Fla. Mar. 20, 2007); Garcia v. Gonzales, No. 06-22386-CIV-LENARD/TORRES, slip op. at 5-6 (S.D. Fla. Dec. 22, 2006); Machado v. Gonzales, No. 06-22202-CIV-DIMITROULEAS, slip op. at 4 (S.D. Fla. Dec. 19, 2006); Malakhov v. U.S. Citizenship & Immigration Servs., No. 06-22299-CIV-JORDAN, slip op. at 1 (S.D. Fla. Dec. 8, 2006); Fernandez v. Gonzales, No. 06-22442-CIV-SEITZ/MCALILEY, slip op. at 3 (S.D. Fla. Dec. 5, 2006); Hussein v. Gonzales, 474 F. Supp. 2d 1265, 1268 (M.D. Fla. 2007); Manzoor v. Chertoff, 472 F. Supp. 2d 801, 807 (E.D. Va. 2007); El-Daour v. Chertoff, 417 F. Supp. 2d 679 (W.D. Pa. 2005).

In support of its Motion to Dismiss, Defendants rely on Danilov v. Aguirre, 370 F. Supp.

2d 441 (E.D. Va. 2005), in which a court faced with similar facts held that an applicant's interview is "merely part of the overall examination process, as is a review of the plaintiff's FBI background investigation." Id. at 444. This Court rejects the logic in Danilov for the three reasons cited in Hussein v. Gonzales, 474 F. Supp. 2d 1265, 1268 (M.D. Fla. 2007). First, a straightforward reading of section 1447(b) indicates that the word "examination" is a single, identifiable event. Id. Second, section 1446 of Title 8 of the United States Code distinguishes between examinations and investigations. Id. Third, the USCIS regulations, as codified in the Code of Federal Regulations, make a distinction between the examination and the investigation. Id. These three reasons support the argument that Congress intended the "examination" to be distinct from the investigative process when it fashioned section 1447(b).

**I.      SECTION 1447(a)**

When interpreting a statute, the Court must first look to the language of the statute itself to "give effect to the unambiguously expressed intent." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984). The language of § 1447(b) - "before the end of the 120-day period after the date on which the examination is conducted" - obviates the need for further inquiry. 8 U.S.C. § 1447(b) (emphasis added). The statutory language indicates a single, specific, and isolated event - the date on which the examination occurred - and not a fluid "process." If Congress had intended for the 120-day period to run only after the completion of a potentially lengthy process, it could have easily penned the statute to reflect that intention. Daami v. Gonzales, No. 05-3667, 2006 WL 1457862 at *5 (D. N.J. May 22, 2006).

Moreover, as Judge Lenard opined in Garcia v. Gonzales, No. 06-22386-CIV-

LENARD/TORRES, slip op. (S.D. Fla. Dec. 22, 2006), to read the statute as Defendants urge would render it meaningless. Id. at 6. If the triggering date in section 1447(b) were the date on which the entire process was concluded, irrespective of the interview date, the applicant would have no recourse for delays. Id. On the other hand, if the USCIS completed all the steps in a timely fashion, but did not make a determination on the application, the applicant would have no notice that the process had been completed, and would be unable to determine whether it was the proper time to apply to the district court. Id. The Court must avoid statutory interpretations that produce unreasonable or absurd results. See U.S. v. Am. Trucking Ass'ns, 310 U.S. 534, 543 (1940).

## II.  DISTINCTION WITHIN SECTION 1446 OF TITLE 8

Furthermore, Title 8, distinguishes between "investigations" and "conduct[ing] examinations." See 8 U.S.C. 1446(a), (b). The Court notes that § 1446 is entitled "Investigation of applicants; examination of applications," which lends support to this Court's interpretation that the investigation is separate from the examination of the applicant. Sections 1446(b), (c), and (d) describe the examination separately from the investigation discussed in 1446(a). Daami, 2006 WL 1457862 at *5.

## III. USCIS REGULATIONS

The USCIS regulations also indicate that the agency itself interprets the statutory meaning of "examination" to be the initial interview and not the entire process. The USCIS regulations provide:

> The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the [FBI] that a full criminal background check of an applicant has been completed.

8 C.F.R. § 335.2(b) (2006).  Further, another regulation provides that "[a] decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2."  Id. § 335.3(a).  By its own express terms, the regulations contemplate that the examination is an isolated event, independent from the FBI background check.  Id.  The 120-day period begins to toll after the initial examination.  In addition, according to the agency's own promulgated procedures, the USCIS may not conduct the initial examination until the background check of the applicant has been completed.  Here, Plaintiff's interview took place before her background check was completed.  That the USCIS failed to follow its own protocol in the instant case does not provide support for Defendants' statutory interpretation.  Like the Court in Machado v. Gonzales, No. 06-22202-CIV-DIMITROULEAS, slip op. (S.D. Fla. Dec. 19, 2006), this Court also points out that this suit would not have been brought had the USCIS simply followed its own internal procedures and waited until the conclusion of the FBI background check before proceeding with Plaintiff's initial interview.  Id. at 4.  Nevertheless, the Court finds that it has jurisdiction to hear this case.[1]

## REMEDY

Having asserted jurisdiction, the Court must now fashion an appropriate remedy.

---

[1] Because the Court exercises jurisdiction pursuant to section 1447(b), it need not address whether it has jurisdiction under the *Mandamus* Act and the APA.

Pursuant to section 1447(b), the Court may either "determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). Therefore, the Court must decide whether to hear the merits of Plaintiff's naturalization application or remand the case to the USCIS for further proceedings. See id. Defendants argue that the Court lacks the information necessary for a final determination on Plaintiff's application and urges the Court to remand the matter. Should Plaintiff be dissatisfied with the USCIS decision, she may return to this Court, after exhaustion of her administrative remedies, for a *de novo* determination. 8 C.F.R. § 336.9(d).

In response, Plaintiff argues that the Court does have the means to investigate her application. Plaintiff submits that, at a hearing, Defendants will have the opportunity to subpoena witnesses and may bring revocation proceedings if it is later found that Plaintiff illegally procured naturalization. While the Court notes that remanding the matter back to the very agency from which Plaintiff is seeking relief is far from ideal, the Court elects to follow the majority of courts which have remanded similar cases back to the USCIS for a final determination.[2] See Rodriguez v. Gonzales, No. 07-20022-CIV-UNGARO, slip op. at 4 (S.D. Fla. Mar. 20, 2007); Garcia v. Gonzales, No. 06-22386-CIV-LENARD/TORRES, slip op. at 5-6 (S.D. Fla. Dec. 22, 2006); Machado v. Gonzales, No. 06-22202-CIV-DIMITROULEAS, slip op. at 4 (S.D. Fla. Dec. 19, 2006); Malakhov v. U.S. Citizenship & Immigration Servs., No. 06-22299-CIV-JORDAN, slip op. at 1 (S.D. Fla. Dec. 8, 2006); Fernandez v. Gonzales, No. 06-22442-CIV-SEITZ/MCALILEY, slip op. at 3 (S.D. Fla. Dec. 5, 2006); Hussein v. Gonzales, 474

---

[2] At this stage, the Court does not determine whether it is in a position to conduct the kind of background check contemplated by the statutory scheme, although it concedes that, in this post-9/11 world, the Department of Homeland Security likely possesses more expertise and resources to do so.

F. Supp. 2d 1265, 1268 (M.D. Fla. 2007); Manzoor v. Chertoff, 472 F. Supp. 2d 801, 807 (E.D. Va. 2007); El-Daour v. Chertoff, 417 F. Supp. 2d 679 (W.D. Pa. 2005).  In remanding the case, the Court notes that Plaintiff will not suffer excessive hardship, as she will be able to continue her status as a lawful permanent resident while her FBI background check is pending.  However, to remand the case without setting a specific time limit for a determination would be to render section 1447(b) powerless.  Congress intended section 1447(b) to provide applicants with a remedy for adjudicative delays.  Therefore, the Court remands this matter to the USCIS and orders Defendants to make a determination on Plaintiff's application for naturalization within 120 days from the date of this Order.

      DONE AND ORDERED in Chambers at Miami, Florida, this 14th day of May, 2007.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Stephen Bander

Milton Aponte, AUSA